UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BFC-BSI, LLC, a Delaware limited liability company, and BFC-BSI II, LLC, a Delaware limited liability company,

    Plaintiffs,

v.

BEST SECURITY ACQUISITIONS, LLC, a Delaware limited liability company; TRAVIS SOULE; an individual; JOHN MASON, an Individual; MATTHEW SACK, an individual; RICK MARCANTONIO, an individual; DAVID WACHSMAN, an individual; LARRY MILLER, an individual; JERRY KENDALL, an individual; CONVERGENT CAPITAL PARTNERS II, L.P., a Delaware limited partnership,

    Defendants.

Case No.13-_____

Honorable _____
United States District Judge

Honorable _____
United States Magistrate Judge

---

DICKINSON WRIGHT PLLC
Peter H. Webster (P48783)
Attorneys for Plaintiffs
2600 West Big Beaver Road, Suite 300
Troy, MI 48084
248-433-7200
pwebster@dickinsonwright.com

---

## COMPLAINT

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in this complaint, nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

Plaintiffs BFC-BSI, LLC and BFC-BSI II, LLC (collectively, BFC-BSI") state the following as their complaint:

## PARTIES, JURISDICTION, AND VENUE

1. Defendants in this case, BEST SECURITY ACQUISITIONS, LLC, a Delaware limited liability company ("BSA"); JOHN MASON, an individual ("Mason"); MATTHEW SACK, an individual ("Sack"); TRAVIS SOULE; an individual ("Soule"); RICK MARCANTONIO, an individual ("Marcantonio"); DAVID WACHSMAN, an individual ("Wachsman"); LARRY MILLER, an individual ("Miller"); JERRY KENDALL, an individual ("Kendall"); and CONVERGENT CAPITAL PARTNERS II, L.P., a Delaware limited partnership ("Convergent") (collectively "Defendants"), undertook a series of concerted and coordinated actions to oppress and dilute the rights and value of the minority interests of BSA to Defendants' respective benefits, and Convergent is subject to lender liability because it breached its fiduciary duties and duty of good faith and fair dealing in concert with other Defendants to the detriment of the minority interests of BSA.

2. Plaintiffs BFC-BSI are Delaware limited liability companies which maintain principal offices and conduct business in Grand Rapids, Michigan and within this judicial district.

3. BSA is a Delaware limited liability company with its principal place of business in Delray Beach, Florida.

4. MASON is an individual who resides in Minneapolis, Minnesota. Mason is a director and an owner of Convergent. Upon information and belief, Mason is a manager and a member of the Management Board of BSA.

5. SACK is an individual who resides in Farmington, New York and is the chief executive officer, manager, and member of the Management Board of BSA. Sack has been on the BSA Management Board from March 2011 to present.

2

6. SOULE is an individual who resides in Minneapolis, Minnesota, works for Convergent, and upon information and belief is a manager and a member of the Management Board of BSA.

7. MARCANTONIO is an individual who resides in Edina Minnesota and is a manager and a member of the Management Board of BSA. Marcantonio has been on the BSA Management Board from January 2013 to present.

8. WACHSMAN is an individual who resides in Bohemia, New York and is a manager and member of the Management Board of BSA. Wachsman has been on the BSA Management Board from January 2013 to present.

9. MILLER is an individual who resides in Grand Rapids, Michigan and is a manager and member of the Management Board of BSA. Miller has been on the BSA Management Board from January 2013 to present.

10. KENDALL is an individual who resides in St. Petersburg, Florida and is a manager and member of the Management Board of BSA. Kendall has been on the BSA Management Board from May 2013 to present.

11. CONVERGENT is a Delaware limited partnership with principal offices in Minneapolis, Minnesota and conducts business in this judicial district.

12. This Court has jurisdiction pursuant to 28 USC 1332(a)(1) because the claims in this Complaint are among parties which are citizens of different States, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

13. Venue is proper pursuant to 28 USC 1391(a) because BFC-BSI and certain parties reside in this judicial district and because a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

14. This Court properly may exercise "limited" personal jurisdiction over Defendants under Michigan's "long arm" statute, MCL 600.715(1) and (5), because, as alleged below, Defendants engaged in "[t]he transaction of any business within the state" and "enter[ed] into a contract for services ... to be performed in the state by the defendant." Defendants engaged in activities that were within Michigan and had an in-state effect (including economic harm caused to BFC-BSI within Michigan).

15. This Court's exercise of personal jurisdiction over Defendants does not violate any right to due process because Defendants purposefully availed itself of the privilege of conducting activities within Michigan and/or caused a consequence in Michigan and the acts of Defendants have sufficiently substantial connections to Michigan to make the exercise of jurisdiction over Defendants reasonable.

## FACTUAL ALLEGATIONS

16. On January 5, 2007, BSA was acquired by a group of investors led by BFC-BSI and an investment fund of Brown Brothers Harriman ("BBH") through a leveraged buyout of the company founder. BSA is a manufacturer and distributor of electronic surveillance systems and sensors. Since 2007, BSA had a variety of senior and mezzanine lenders provide capital in addition to the equity investments into the company.

17. In July 2009, BSA acquired a competitor, Unisen, through an all-debt financing. The all-debt financing evidenced significant equity of BSA and that BSA's lenders and investors were confident of BSA's performance such that no equity was necessary for the acquisition.

18. In August 2010, BBH's investment fund decided to exit its investment and wind up the fund activity. BBH exited the investment with a positive result and a solid return rate for

its asset class. In conjunction with this transaction, Convergent became a mezzanine lender to BSA.

19. In March 2011, BSA acquired RuMe, a company with a complementary product line. As part of that acquisition, Sack became an equity investor in BFC-BSI. Also in March 2011, BSA entered into a Loan and Security Agreement dated March 9, 2011 ("Loan Agreement") with FCC, LLC b/d/b First Capital ("First Capital"). First Capital was the senior lender to BSA.

20. In November 2011, Sack became the chief executive officer of BSA.

21. Leading up to November 2011, Convergent and Mason demanded that BSA terminate BSA's then chief executive officer Stephen J. Hall ("Hall"). The removal of Hall resulted in the withdrawal of the validity guaranty provided to First Capital to fulfill a condition of its financing.

22. As the new CEO, Sack willfully refused to sign the validity guaranty which caused a further default with First Capital. First Capital also stated that Sack was not a suitable replacement for Hall.

23. The First Capital defaults were identified in correspondence dated February 2012, from First Capital and such specified defaults included the withdrawal of the validity guaranty of Hall dated March 9, 2011, the resignation of Hall with no satisfactory replacement, and a material adverse effect of BSA's financial condition related to its payables.

24. The threat of default and the remedies under the Loan Agreement and associated documents required BSA to seek new senior loan debt. Blackford Capital Associates, LLC ("Blackford"), a member of BFC-BSI, worked to arrange new senior financing. After considerable effort by Blackford between February 2012 and June 2012, BSA was presented

with at least seven credible and viable loan proposals for loan selection to replace First Capital. These include proposals from Summit Financial, Presidential Financial, Entrepreneur Growth Capital, US Capital, Accord Financial, and Avid Bank.

25. In June 2012, BSA signed a Letter of Intent with Presidential Financial respecting new senior financing. Convergent rejected Presidential Financing, undertook actions to prevent such financing and such financing was never closed.

26. In June 2012, Sack, Mason and Convergent required then BSA Management Board member Tony Kiehn, a member of Blackford to be removed as Chairperson of BSA and removed from the Management Board. This removal of the Chairperson made it virtually impossible to arrange new senior financing.

27. After First Capital called the senior loan and after Sack, Mason and Convergent rejected the new senior financing to be provided by Presidential Financial, BSA had less than five weeks to put into place another financing structure. In July 2012, Sack, Mason and Convergent engineered and started action on a plan where Convergent would also become the new senior lender, as well as the mezzanine lender, and where Mason would also have an equity position in BSA. As a result, Mason would be in effective control of the senior loan, mezzanine loan, and equity control of BSA.

28. This financing structure forced by Sack, Mason and Convergent was atypical and also designed to advance certain preexisting tax priorities of Convergent and Sack to the detriment of Plaintiffs. This atypical financing structure was premised on the false representations made by Sack, Mason and Convergent that new equity was required for the future success of BSA.

29. In August 2012, under the false presentation of circumstances, Sack, Mason and Convergent forced a recapitalization structure that excluded other prospective senior lenders and required the selection of Convergent as the senior lender to BSA under terms and conditions detrimental to Plaintiff (the "August 2012 Cramdown").

30. The August 2012 Cramdown structure was also tied to the promise that in addition to the refinancing, additional equity would be raised. But, the August 2012 Cramdown structure was designed to be so complicated and commercially unreasonable that no new investor would ever understand the capital structure sufficient to invest in BSA. The August 2012 Cramdown structure also resulted in Mason becoming majority equity and controlling interests in BSA and Sack dramatically increasing his equity interest in BSA.

31. The recapitalization of BSA provided Convergent a first lien position and accommodated also the personal tax considerations of Sack and Convergent to the detriment of Plaintiffs' equity interests, including the cram down of Plaintiff's equity.

32. One of the reasons provided for the demand of additional equity and a cram down of Plaintiffs' interests is to pay Sack amounts owed to Sack by BSA associated with the RuMe acquisition on an accelerated basis to the benefit of Sack and the detriment of the minority's interest.

33. Sack, Mason and Convergent intentionally and unlawfully manipulated and misrepresented BSA's financial position and need for additional debt or equity financing, including making inconsistent representations of the need for additional debt and equity financing. These misrepresentations were designed to influence management decisions of BSA to the benefit of Sack, Mason and Convergent and to the detriment of Plaintiffs.

34. Convergent as the mezzanine and new senior lender to BSA exerted improper and illegal control over the business and management decisions of BSA. These actions included threatening to take adverse action in bad faith against BSA and the minority interests of Plaintiffs, interfering with BSA's day to day management to the detriment of Plaintiffs' minority interests, and breaching its fiduciary duty and duty of good faith to BSA and its minority interests.

35. The August Cramdown structure also purported to extinguish preemptive rights of Plaintiffs to their detriment and to the benefit of Sack, Mason and Convergent.

36. Contrary to what certain Defendants misleadingly represented at the time of the August Cramdown that additional equity was necessary for the success of BSA, in January 2013, certain Defendants have since claimed that no additional equity is needed for the success of the company, as evidenced by future capital contributions to support the growth of the business coming into the company in the form of debt. Defendants, including the BSA Management Board, have taken actions and made decisions since January 2013 including the management board decisions respecting capital contributions and additional equity needs, which evidence the fact that certain Defendants misrepresented the equity needs of BSA at the time of the August 2012 Cramdown.

37. Moreover, in July 2013, BSA was in a substantially similar financial position as in August 2012, and yet BSA and the BSA Management Board unanimously allowed Convergent to place more debt as opposed to additional equity, underscoring the misrepresentation that occurred to induce the August Cramdown. Specifically, the revenues, earnings, and debt levels were nearly identical on a relative basis between 2012 and 2013, and the management board unanimously endorsed a resolution for BSA to borrow more debt from

Convergent, thereby expressly endorsing the fact that an equity cramdown was not necessary in August 2012.

## COUNT I     BREACH OF FIDUCIARY DUTY AND LOYALTY

38. BFC-BSI incorporates its allegations in paragraphs 1 through 37.

39. Sack, Mason and Convergent have a controlling interest in BSA and have exercised control and direction over the management of BSA.

40. Defendants owe a duty of good faith to Plaintiffs which includes the duty to Plaintiffs to exercise the utmost good faith in the control and management of BSA and to manage the limited liability company as to Plaintiffs to produce the best possible return to Plaintiffs and their investment. As officers and managers of BSA, Defendants owe and continue to owe to Plaintiffs, as a minority equity owners of BSA, fiduciary duties of good faith, due care, loyalty and honesty by virtue of their common law obligations, the trust reposed by Plaintiffs in Defendants to operate BSA in good faith, and Defendants' superior knowledge and control of the current financial operation of BSA.

41. Convergent owes a duty of fiduciary, good faith, and fair dealing in its lending relationship with BSA and Plaintiffs as minority interests of BSA.

42. Defendants' conduct as alleged above constitutes breaches of fiduciary duties owed to Plaintiffs.

43. Defendants' breaches of fiduciary duty proximately have caused injury, harm and damage directly to Plaintiffs as minority equity owners.

44. Defendants have breached their fiduciary duties by, among other actions:

    (a) Caused the default by BSA of its obligations to First Capital.

(b) Engineering the exclusion of other prospective senior lenders and the selection of Convergent as the senior lender to BSA under terms and conditions detrimental to Plaintiffs.

(c) Engineering the recapitalization of BSA in a manner and structure to provide Convergent a first lien position and to accommodate the personal tax considerations of Sack and Convergent to the detriment of Plaintiffs' equity interests, including the cram down of Plaintiff's equity.

(d) Intentionally and unlawfully manipulating and misrepresenting BSA's financial position and need for additional debt or equity financing, including making inconsistent representations of the need for additional debt and equity financing to Plaintiffs so as to influence management decisions of BSA to the benefit of Defendants and to the detriment of Plaintiffs.

45. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff has suffered damages.

WHEREFORE, BFC-BSI asks that this honorable Court enter judgment in its favor and against Defendants as to Count I, awarding BFC-BSI actual, incidental, consequential, and punitive damages, its attorney fees and costs, and such other and further relief as this honorable Court deems just and equitable, or as provided by law.

## COUNT II    OPPRESSION OF MINORITY INTERESTS

46. BFC-BSI incorporates its allegations in paragraphs 1 through 45.

47. At all relevant times, Defendants have been in control of BSA and controlled its management and operations or wrongfully exerted control over BSA.

48. As alleged above, Defendants' conduct is illegal, fraudulent or willfully unfair and oppressive to Plaintiffs, as members of BSA.

49. As alleged above, Defendants' conduct constitutes a continuous course of conduct or a significant action or series of actions that substantially interferes with the interests of Plaintiffs as equity owners of BSA.

50. Defendants' conduct violates Michigan's Limited Liability Company Act, MCL 450.4101 et seq. (the "Act") and proximately has caused injury, harm and damage directly to Plaintiffs as minority owners.

51. The Act allows Plaintiff to sue Defendants to establish that the acts of the directors or those in control of the limited liability company are illegal, fraudulent, or constitute willfully unfair and oppressive conduct to a member.

52. Defendants have conducted a course of conduct or a significant series of actions that substantially and disproportionately interfered with the interests of Plaintiff.

53. The acts of Defendants as those in control of BSA are illegal, fraudulent, or willfully unfair and oppressive" by, *inter alia*:

    (a) Failing and/or refusing to follow the requirements of the Act.

    (b) Engaged in each of the other aforesaid acts and omissions as set forth in this Complaint.

54. As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered the following injuries and damages:

    (a) At the time of the August 2012 Cramdown, the fair value of the interests owned by Plaintiffs was in excess of $2 million. Several months later, without the cramdown, the fair value of the interests would have been worth $5 million or more.

(b) Plaintiffs lost preemptive rights and the expectancy of value and return on investment.

WHEREFORE, BFC-BSI asks that this honorable Court enter judgment in its favor and against Defendants as to Count II, awarding BFC-BSI actual, incidental, consequential, and punitive damages, its attorney fees and costs, and such other and further relief as this honorable Court deems just and equitable, or as provided by law.

## COUNT III CIVIL CONSPIRACY / CONCERT OF ACTION

55. BFC-BSI incorporates its allegations in paragraphs 1 through 54.

56. Defendants have engaged in concerted action, by a combination of two or more persons to accomplish a criminal or unlawful purpose causing damages to Plaintiffs arising out of the acts committed pursuant to the conspiracy

57. Defendants illegally, maliciously, and wrongfully conspired with one another with the intent to and for the illegal purpose of committing the tortious acts as more fully set forth herein.

58. Defendants, in combination and concert with one another, acted unlawfully in the manner set forth herein.

59. By engaging in the conduct described in this Complaint, Defendants acted maliciously, fraudulently and oppressively, and with full knowledge of the consequences and damage to Plaintiffs.

60. As a direct and proximate result of the conspiracy and Defendants' illegal, wrongful, or tortious acts, Plaintiffs have suffered the following injuries and damages:

(a) At the time of the August 2012 Cramdown, the fair value of the interests owned by Plaintiffs was in excess of $2 million. Several months later, without the cramdown, the fair value of the interests would have been worth $5 million or more.

(b) Plaintiffs lost preemptive rights and the expectancy of value and return on investment.

WHEREFORE, BFC-BSI asks that this honorable Court enter judgment in its favor and against Defendants as to Count III, awarding BFC-BSI actual, incidental, consequential, and punitive damages, its attorney fees and costs, and such other and further relief as this honorable Court deems just and equitable, or as provided by law.

## COUNT IV   UNJUST ENRICHMENT

61. BFC-BSI incorporates its allegations in paragraphs 1 through 60.

62. As a result of the Defendants' wrongful activities as described in this Complaint, the Defendants have been unjustly enriched. Such unjust enrichment includes, but is not limited to, the increase in value wrongfully obtained by Defendants as a result of the elimination and cram down of the equity interests of BFC-BSI and the minority interests of BSA.

63. Retention of such benefits by Defendants is inequitable.

WHEREFORE, BFC-BSI asks that this honorable Court enter judgment in its favor and against Defendants as to Count IV, awarding BFC-BSI actual, incidental, consequential, and punitive damages, its attorney fees and costs, and such other and further relief as this honorable Court deems just and equitable, or as provided by law.

## COUNT V   LENDER LIABILITIES

64. BFC-BSI incorporates its allegations in paragraphs 1 through 63.

65. As stated above, Convergent is a lender to BSA which company is owned in part by Plaintiffs.

66. At all relevant times, Convergent owed a fiduciary duty and a duty of good faith and fair dealing to Plaintiffs.

67. As stated above, Convergent violated its duties and is subject to lender liabilities because it undertook the following non-exhaustive list of improper actions:

(a) Substantially interfered with the management and control of BSA by demanding the resignation of its former CEO;

(b) Demanded and/or substantially contributed to BSA's default of the First Capital obligations;

(c) Did not allow a satisfactory and independent replacement of the CEO;

(d) Rejected and obstructed replacement senior financing including financing referenced in the letter of intent with Presidential Financial; and

(e) Forced the August 2012 Cramdown structure in concert with certain other Defendants which structure was based on the false and misleading statements of need for additional equity.

WHEREFORE, BFC-BSI asks that this honorable Court enter judgment in its favor and against Defendants as to Count IV, awarding BFC-BSI actual, incidental, consequential, and punitive damages, its attorney fees and costs, and such other and further relief as this honorable Court deems just and equitable, or as provided by law.

## PRAYER FOR RELIEF

1. All further equitable relief to which they may be entitled, including canceling past oppressive acts that constitute oppressive conduct and prohibiting all future acts that would constitute oppressive conduct;

2. Requiring Defendants to purchase Plaintiffs equity interests in BSA at fair value before the wrongful cram down of Defendants equity interests;

3. Enter judgment in its favor and against Defendants, awarding BFC-BSI actual, incidental, consequential, and punitive damages, its attorney fees and costs, and such other and further relief as this honorable Court deems just and equitable, or as provided by law.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury in this matter.

DICKINSON WRIGHT PLLC

/s/Peter H. Webster
Peter H. Webster (P48783)
Attorneys for Plaintiffs
2600 West Big Beaver Road, Suite 300
Troy, MI 48084
248-433-7200
pwebster@dickinsonwright.com

Dated: October 30, 2013

## VERIFICATION

I, Martin Stein, for BFC-BSI, LLC, state that I have personal knowledge of all of the facts recited in the above pleading and the information in the foregoing Complaint are true and correct to the best of my knowledge and belief based upon the information made available to me.

_____
Martin Stein

Subscribed and sworn to before me
this 29th day of October, 2013.

_____
Notary Public, Kent County,
State of Michigan
Acting in Kent County, MI
My Commission Expires: 1/19/2018

BLOOMFIELD 53057-2 1327232v1